IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JEREMY IRONS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:21-CV-00504 -MAB** |
| | ) | |
| **NICHOLAS L. FIERO, ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendant Ethan Clary's motion for summary

judgment on the issue of exhaustion of administrative remedies (Doc. 36). For the reasons

set forth below, the motion is DENIED.

### PROCEDURAL BACKGROUND

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 21, 2021,

for deprivations of his constitutional rights while incarcerated at Lawrence Correctional

Center ("Lawrence") (Docs. 1, 12). Plaintiff's claims are centered on his treatment

immediately following a physical altercation he had with another inmate on May 23,

2019. *Id.*

The Court conducted a threshold review of the first amended complaint, pursuant

to 28 U.S.C. § 1915A, and allowed Plaintiff to proceed on four counts against Defendants:

> **Count 1:**   Eighth Amendment claim against Defendants Fiero and Reid for
> the use of excessive force on Plaintiff on May 23, 2019;

**Count 2:**   Eighth Amendment claim against Defendants Fiero, Reid, Clary, and Nurse K for deliberate indifference to Plaintiff's serious medical needs related to his injured leg/ankle on May 23, 2019;

**Count 3:**   First Amendment claim against Defendants Eckelberry and Reid for encouraging Plaintiff's cellmate to attack him and placing him at risk of injury in retaliation for Plaintiff filing grievances;

**Count 4:**   First Amendment claim against Defendant Fiero for opening Plaintiff's grievances and legal mail in retaliation for Plaintiff filing grievances.

(Doc. 12, pp. 3-4).

Defendant Clary filed his motion, and supporting memorandum, for summary judgment on exhaustion of administrative remedies on October 29, 2021 (Docs. 35, 36). Defendants Fiero, Reid, Eckelberry, and Kermicle did not move for summary judgment on the issue of exhaustion.

In his motion, Defendant Clary argued that Plaintiff has not exhausted his administrative remedies prior to filing his lawsuit. Plaintiff filed his response on December 1, 2021 (Doc. 42). Defendant Clary did not file a reply brief or otherwise address the additional facts asserted by Plaintiff or the evidence he submitted in support thereof. Having closely reviewed the briefs and evidence submitted by both parties, the Court determined there were no disputed issues of material fact and therefore no hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was necessary.

## FACTUAL BACKGROUND

Plaintiff is an inmate within the Illinois Department of Corrections ("IDOC") and is currently incarcerated at Lawrence, where the events at issue also took place (Doc. 12).

In his complaint, Plaintiff details that he was involved in a physical altercation with another inmate on May 23, 2019 (Doc. 12, p. 1). During the altercation, Defendant Fiero grabbed Plaintiff and put him in a chokehold. While the other inmate stopped fighting Plaintiff, Plaintiff alleges that Defendant Fiero continued to maintain an aggressive and excessive temperament while maintaining the chokehold. Defendant Fiero then pushed Plaintiff down and pinned his left leg, breaking it two places (*Id.* at pp. 1-2). Defendant Reid sprayed Plaintiff in the face with mace before Defendant Fiero aggressively handcuffed Plaintiff, took him to the shower, and locked him in there (*Id.* at p. 2).

After some time, Defendant Clary escorted Plaintiff to the healthcare unit, but refused to provide Plaintiff with a wheelchair for his broken leg. *Id.* Plaintiff alleges that Defendant Clary threatened to drag Plaintiff if he didn't walk on his own. While Defendant Kermicle washed Plaintiff's face and examined his ankle at the healthcare unit, she did not provide any treatment for his broken leg and the pain he was experiencing. Plaintiff was forced to walk back to segregation, and was placed in a cell in excruciating pain, with mace still on his body. *Id.* Plaintiff was re-examined by a nurse on May 23, 2019 and had X-rays taken, which revealed that his ankle was broken in two places. *Id.* Throughout this process, Plaintiff filed multiple grievances against Lawrence staff, and alleges that Defendants Eckelberry and Reid retaliated against him for filing these grievances. *Id.*

Defendant Clary contends that there are only four relevant grievances. Plaintiff says there is an additional grievance that is also relevant. Therefore, the Court focuses its analysis on those five grievances, which are as follows:

A. Grievance 6-19-10 — May 28, 2019

In this grievance, Plaintiff describes the altercation with the other inmate and then the subsequent altercation with both Defendants Fiero and Reid, explaining how Fiero pinned his leg and how Reid sprayed him with mace (Doc. 36, pp. 62-63). This grievance does not mention Plaintiff requesting a wheelchair and/or being brought to the healthcare unit by Defendant Clary. This grievance was reviewed by Plaintiff's counselor and then the Chief Administrative Officer ("CAO"), who signed the grievance at the beginning of July, although the exact date is illegible (*Id.* at p. 61). This grievance was stamped as "received" by the Administrative Review Board ("ARB") on August 2, 2019. *Id.* The ARB determined that Plaintiff's grievance should be denied, as after review of the incident, the "use of force for administering pepper spray was justified. At no time during the review did Plaintiff make any mention of "staff misconduct" (*Id.* at p. 46).

B. Grievance 6-19-127 — Dated May 31, 2019

In this grievance, Plaintiff details that he was involved in a fight on May 23, 2019 and is grieving his punishment for the fight, as he believes he should not be held responsible for paying restitution since Defendant Fiero broke his foot (*Id.* at p. 66). Plaintiff also outlined that his segregation term was unfair (*Id.* at p. 67). Plaintiff does not mention requesting a wheelchair and/or being brought to the healthcare unit by Defendant Clary in this grievance.

This grievance was filed as an emergency grievance, but the CAO determined it to be a non-emergency on Jun 9, 2019 (*Id.* at p. 66). The grievance went through the appropriate channels at Lawrence, but appears to have been denied by Lawrence staff as a "duplicate" grievance of Plaintiff's May 28, 2019 Grievance (Number 6-19-10) in a memo filled out by, presumably, someone on Lawrence's staff (*Id.* at p. 68). This grievance, including the form, is stamped as received by the ARB on August 2, 2019. *Id.*

C. Grievance 6-19-179—June 2, 2019

In this grievance, Plaintiff details that he is upset with his treatment from Defendant Kermicle when he arrived at the healthcare unit after the May 23 altercation (*Id.* at pp. 44-45). Plaintiff explains that Defendant Kermicle told him that his leg wasn't too bad because he had walked to the healthcare unit using his left leg (*Id.* at p. 45). He details he was in excruciating pain both before and after he was examined at the healthcare unit, and that his leg was very swollen and like a "limp spaghetti noodle." *Id.* Plaintiff does not mention requesting a wheelchair to get to the healthcare unit and/or Defendant Clary, or his role, in transporting him to the healthcare unit.

This grievance went through the appropriate channels at Lawrence, and was reviewed and signed by the CAO on or around July 25, 2019, it seems (although the handwriting is illegible) (*Id.* at p. 43). This grievance is stamped as "received" by the ARB on August 15, 2019. *Id.* Even though the grievance was received by the ARB, as best the Court can tell, the ARB's decision regarding this grievance is not in the record.

D. Grievance 6-19-295 — June 15, 2019

In this grievance, Plaintiff explains that his health and safety are at risk due to the May 2019 fight, as he believes prison officials are retaliating against him for writing grievances. He also explains that he is scheduled to leave segregation soon, but still has a cast on his leg and believes this will make him a target in the general population. He requests to be put in a cell with a particular prisoner who he feels comfortable and safe with (*Id.* at p. 83).

This grievance was signed by the CAO on August 1, 2019 and stamped as "received" by the ARB on August 15, 2019 (*Id.* at p. 85). The grievance was ultimately denied on September 20, 2019 by the ARB after the ARB found the issues were appropriately handled at the institution level and that the issues outlined about Defendants Fiero and Nurse K had been addressed in previous grievances (6-19-10 and 6-19-179).

E. Grievance 8-19-349 — August 18, 2019

This grievance does not appear in any of Defendant Clary's exhibits, nor did Defendant Clary file a reply brief to address this grievance; therefore, Defendant Clary did not dispute Plaintiff's assertions regarding this grievance or offer any evidence to rebut them. This grievance is attached to Plaintiff's response to the motion for summary judgment (Doc. 42, pp. 6-13).

In this grievance, written on August 18, 2019, Plaintiff details that he is being retaliated by Lawrence administrative staff for filing grievances, which is causing him emotional and mental distress and anguish (*Id.* at p. 7). Plaintiff reiterates what happened

in the May 2019 fight, including his claims of excessive force by Defendants Fiero and Reid (*Id.* at pp. 7-8). He then writes, "After I repeatedly told every C/O-staff member there on the scene that my leg was broke I was still made to walk on this broken leg without any immediate medical attention" (*Id.* at p. 8). Plaintiff also references previous grievances he wrote including grievances numbered 6-19-179; 6-19-506[1]; and 6-19-010. Plaintiff explains that he believes certain grievances were not processed. He also notes that he is being charged close to $3,000.00 for his broken leg, which he believes is unfair since he argues that Defendant Fiero was the one who broke his leg. According to Plaintiff, he should not be required to pay for this; rather, he should be compensated for his broken leg (*Id.* at p. 9). Finally, he writes, "I want to also make clear that C/O MaClery is the one who made me walk from 2 house all the way to health care after I told him a number of times I need medical attention I was told (if I did not walk I would be dragged)." *Id.*

Attached to this grievance is an internal memorandum titled, "Grievance/Inmate Correspondence Lawrence Correctional Center," in which a Lawrence official returned the grievance, detailing that this issue "has been previously addressed" and that Plaintiff had already received an answer to 6-19-10 and 6-19-506 (*Id.* at p. 6).   This correspondence is dated September 10, 2019. *Id.* Defendant Clary did not produce a copy of this grievance despite the prison officials acknowledging receipt of it, nor did Defendant Clary file a reply brief to address these additional facts (*see* Doc. 42).

---

[1] Grievance 6-19-506 does not appear to be in the record before the Court at this time.

## LEGAL STANDARDS

### *Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). However, where there is no disputed issue of fact, no hearing is necessary.

### *Exhaustion*

The Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). Exhaustion is an affirmative defense, which the defendants bear the burden of

proving. *Pavey*, 663 F.3d at 903 (citations omitted).

In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozzo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. ILL. ADMIN. CODE, tit. 20, § 504.800, *et seq.* (2017). The regulations first require an inmate to attempt to resolve the dispute through his or her counselor. *Id.* at § 504.810(a).[2] If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (the warden). *Id. at* § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the warden's decision, he or she has thirty days to appeal to the Director of the IDOC by sending the grievance to the ARB. *Id.* at § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(d), (e).

An inmate may also request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840 (2017). If the warden determines that "there is a substantial risk of imminent personal injury or

---

[2] There are exceptions to this rule. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance and respond to the inmate, indicating what action shall be or has been taken. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an emergency basis, the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.*

Though the Seventh Circuit requires strict adherence to the exhaustion requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g., Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

## DISCUSSION

Under the Prison Litigation Reform Act ("PLRA"), all prison inmates bringing an action under 42 U.S.C. §1983 must first exhaust all administrative remedies. *See* 42 U.S.C §1997e (a); *Pavey v. Conley*, 544 F.3d, 739, 740 (7th Cir. 2008). Defendant Clary argues that none of the grievances in the record "mention Plaintiff requesting, and being denied, a wheelchair by the correctional officer who escorted him to the healthcare unit, or being threatened in any manner whatsoever by the correctional officer who escorted him to the healthcare unit" (Doc. 36, p. 6). Put simply, Plaintiff did not fully exhaust his claim against Defendant Clary prior to filing his lawsuit. Plaintiff's response tells a different story, so

the Court focuses its analysis on the grievance Plaintiff filed with his response that was not addressed by Defendant Clary.

In his response, Plaintiff argues that he did attempt to exhaust his claim against Defendant Clary by filing an additional grievance dated August 18, 2019 (grievance number 8-19-349) in which Plaintiff specifically names Defendant Clary and explains that Plaintiff was made to walk to the healthcare unit on a broken leg (Doc. 42, p. 3). Grievances are intended to give prison officials notice of a problem and a chance to correct it before they are subjected to a lawsuit; grievances are not intended to put an individual defendant on notice of a claim against him. *Jones v. Bock*, 549 U.S. 199, 219 (2007) ("We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit . . . . {E]arly notice to those who might later be sued . . . has not been through to be one of the leading purposes of the exhaustion requirement."). Plaintiff is not required to specifically *name* the Defendants, but he must attribute some actions to them and describe them in the grievance so the Court can identify which Defendants were part of the issues he is grieving. Here, Plaintiff did name Defendant Clary in the August 18, 2019 grievance *and* described his actions. Therefore, the Court must determine whether this grievance was timely filed and fully exhausted prior to Plaintiff filing this lawsuit.

Plaintiff argues this was a timely-filed grievance, but prison officials refused to process the grievance, as they determined, incorrectly, that it was a duplicate of two of Plaintiff's prior grievances that were processed fully (grievances 6-19-10 and 6-19-506) (Doc. 42, p. 4). He argues, simply, that he was thwarted from fully exhausting his claims,

as he was doing his best to exhaust all of his claims, but Lawrence officials "impeded any further process of exhaustion" (*Id.* at p. 3). Defendant Clary did not file a reply brief or counter any of Plaintiff's arguments. While there could be an argument that the timing of this grievance may have placed it outside of the acceptable window,[3] the Court declines to make those arguments for Defendant Clary. *See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 860 (7th Cir. 2017) (citing *Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999) ("It is not the responsibility of this court to make arguments for the parties."))). Ultimately, Plaintiff argues he did the best he could to grieve the claim related to Defendant Clary and Clary has offered nothing to rebut this assertion or the evidence that Plaintiff has brought forth.

A close look at Plaintiff's grievances in the record shows that the August 18, 2019 grievance (8-19-349) is not a duplicate of prior grievances. The Court cannot examine whether this grievance is a duplicate of 6-19-506 because it is not in the record. The absence of this grievance in the record undercuts Defendant Clary's position that it is a

---

[3] The Illinois Administrative Code outlines that a grievance must be filed within 60 days of an incident. While there could be an argument that Plaintiff's August 18, 2019 grievance is untimely, as it was filed approximately 87 days after the May 23, 2019 fight, the success of this argument depends on the timing of the issue with Defendant Clary and Lawrence prison officials' actions to process the grievance. See 20 ILL. ADMIN. CODE § 504.810, which states, in the relevant part, "An offender may file a written grievance on a grievance form that shall be made available in all living units. Grievances shall be addressed to his or her institutional counselor; however, complaints concerning discipline or sexual abuse shall be sent by the offender directly to the Grievance Officer. A grievance must be filed with the counselor or Grievance Officer in accordance with the procedures in this Subpart, within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance. However, if an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered. Grievances related to allegations of sexual abuse shall not be subject to any filing time limit." The Court acknowledges that there are exceptions to the exhaustion rule, such as the continuing violation doctrine, or (as Plaintiff has argued here), that he was ultimately thwarted from appropriately exhausting this claim against Defendant Clary by the actions of Lawrence officials.

duplicate. And in looking at grievance 6-19-10, the Court can clearly spot key differences between the two. Grievance 6-19-10 details the May 2019 fight and Plaintiff's treatment by Lawrence staff in the fight. He asks for restitution from Defendant Fiero for his injury and pain, and wants to be moved to a safer location at the prison (Doc. 36, pp. 62-63). In comparison, Plaintiff's August 18 grievance does relate to the May 2019 fight, but Plaintiff asks for certain grievances to be processed, as he believes they are not being processed. Additionally, he requests an investigation into the excessive force used against him (Doc. 42, pp. 9-10. The Court notes that this grievance does reference grievances 6-19-10 and 6-19-506, but it also includes additional information *specifically* about Defendant Clary, which did not appear in previous grievances in the record (*Id.* at pp.8-9).

It's important to reiterate that exhaustion is an affirmative defense, which the *defendants bear the burden of proving*. *Pavey*, 663 F.3d at 903 (citations omitted). In this instance, Defendant Clary was unresponsive to Plaintiff's main argument and that supporting evidence that he submitted. The only records Defendant Clary submitted to the Court are from the ARB. There is no way to see how Plaintiff's August 2019 grievance traveled through the internal systems at Lawrence, as Defendant Clary did not submit Plaintiff's records from Lawrence.

As such, the Court considers it undisputed that Plaintiff attempted to submit the August 18, 2019 grievance (which grieved the issues against Defendant Clary), but this grievance was incorrectly determined to be a duplicate and thus rendered the process unavailable to him. FED. R. CIV. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact

undisputed for purposes of the motion."). *See also Bankston v. Simmons*, No. 3:17-CV-722-NJR-DGW, 2018 WL 4002057, at *3 (S.D. Ill. Aug. 22, 2018) (finding no factual dispute where plaintiff provided evidence that he submitted a grievance that went unanswered and defendant failed to file a reply brief or otherwise refute plaintiff's evidence); *Blakes v. Baker*, No. 13-3307, 2015 WL 300459, at *4 (C.D. Ill. Jan. 22, 2015) (finding no factual dispute where plaintiff submitted evidence that warden did not respond to his grievance within two months and defendant failed to provide any argument or competent evidence to refute plaintiff); *Saiger v. Funk*, No. 13-CV-3298, 2014 WL 3868223, at *3 (C.D. Ill. Aug. 6, 2014) (finding no factual dispute where the plaintiff's provided sworn statement that he filed a grievance that went unanswered and the defendant failed to refute plaintiff's statement with any competent evidence). *Cf. Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) ("A swearing contest requires an evidentiary hearing to resolve . . . .").

Though the Seventh Circuit requires strict adherence to the exhaustion requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a)**.** Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g., Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809**.** Based on the information presented, including the undisputed evidence offered by Plaintiff, the key grievance at issue was clearly not a duplicate and Defendant Clary cannot carry his burden on the affirmative defense of exhaustion.

<u>C<small>ONCLUSION</small></u>

Defendants' motion for summary judgment is **DENIED.** The stay on merits-based discovery (*see* Doc. 28) is **LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's claims. A new scheduling order will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: August 17, 2022**

<u>**s/ Mark A. Beatty**</u>
**MARK A. BEATTY**
**United States Magistrate Judge**