## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEREMY IRONS, )  | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **Case No. 3:21-CV-504-MAB** |
| ) | |
| NICHOLAS FIERO, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendants Justin Eckelberry, Nicholas Fiero, and Robert Reid's Partial Motion for Summary Judgment (Doc. 67) and Defendant Hayley Kermicle's Motion for Summary Judgment (Docs. 68, 69). For the reasons set forth below, Defendants Eckelberry, Fiero, and Reid's motion is GRANTED in part and DENIED in part (Doc. 67), and Defendant Kermicle's motion is DENIED (Doc. 68).

### PROCEDURAL AND FACTUAL BACKGROUND

On May 21, 2021, Plaintiff Jeremy Irons filed this civil rights action pursuant to 42. U.S.C. § 1983 for alleged deprivations of his constitutional rights while he was incarcerated at Lawrence Correctional Center (Doc. 1). Plaintiff's Complaint alleges that he was involved in a physical altercation with another inmate on May 23, 2019 (*see* Doc. 12 at p. 1). During that altercation, Defendant Fiero, a correctional officer at Lawrence, grabbed Plaintiff and placed him in a chokehold (*Id.* at pp. 1-2). Defendant Fiero then pushed Plaintiff down, breaking his left ankle in the process (*Id.*). Thereafter, Defendant Reid pepper sprayed Plaintiff while Defendant Fiero held him down (*Id.* at p. 2).

Plaintiff was then locked in the showers for a brief period, before he was ultimately taken to the healthcare unit where he was treated by Defendant Kermicle, a nurse at Lawrence (*Id.*). Defendant Kermicle washed the pepper spray from Plaintiff's eyes, and while it is disputed whether she observed Plaintiff's left ankle injury, the parties agree she did not provide any treatment or medication for Plaintiff's ankle injury at that time (*Id.*; *see also* Doc. 69 at pp. 2-3; Doc. 70 at p. 3). Plaintiff's visit with Defendant Kermicle lasted just three and a half minutes and he was taken to segregation immediately afterwards (Doc. 12 at p. 2; Doc. 69-2 at p. 122).

Plaintiff allegedly suffered from excruciating pain while housed in segregation that night (Doc. 12 at p. 2; Doc. 1 at pp. 58-59). Plaintiff was referred to a physician the following morning after telling a different nurse of his severe ankle pain (Doc. 69-1 at p. 4). X-rays indicated that Plaintiff's left ankle was broken and, as a result, Plaintiff was taken by ambulance to a hospital for treatment (*Id.* at p. 2; Doc. 12 at p. 2). The hospital diagnosed Plaintiff with a fractured fibula and provided him with certain treatment, including a walking boot and instructions to take Tylenol or Motrin for pain, before he returned to Lawrence later that day (Doc. 12 at p. 2; Doc. 69-1 at pp. 4 & 37-39). Over the following months, Plaintiff's broken ankle continued to hurt him, and he received additional treatment for that injury (Doc. 12 at p. 2; Doc. 69-9).

Plaintiff filed several grievances following the May 23, 2019, incident (*see, e.g.*, Doc. 67-5 at pp. 53-54). Most notably, on May 28, 2019, Plaintiff filed a grievance that alleged Defendants Fiero and Reid used excessive force against him and exhibited deliberate indifference to his ankle injury (*Id.* at pp. 53-54 & 17-18). Defendants Fiero and Reid both

were notified of this grievance and provided responses (*see* Doc. 67-2 at pp. 86-87; Doc. 67-4 at pp. 77-78).

On August 25, 2019, while Plaintiff was still wearing a boot and recovering from his ankle injury, Defendant Eckelberry allegedly returned Plaintiff's cellmate, Xavier Johnson, to their cell even though Mr. Johnson was not feeling mentally stable and sought to refuse housing so he could be left alone in segregation (Doc. 12 at p. 2; Doc. 67-1 at pp. 48-50). In response to Mr. Johnson's request to be taken to segregation, Defendant Eckelberry allegedly asked Mr. Johnson, "[w]hat are you scared of? Your cellie only has one leg. I know you'll beat his ass." (Doc. 67-1 at p. 49). Defendant Eckelberry also refused to allow Plaintiff and Mr. Johnson out of their cell later that day (*see* Doc. 1 at p. 19). As a result, Plaintiff subsequently filed a grievance against Defendant Eckelberry for forcing his allegedly unstable cellmate to remain in his cell and encouraging Plaintiff and Mr. Johnson to fight (*Id.* at pp. 17-19).

On August 29, 2019, Mr. Johnson again requested to be moved from his shared cell with Plaintiff and taken to segregation (Doc. 67-1 at pp. 51-52). Defendant Reid refused the request and allegedly told Mr. Johnson that he knew Mr. Johnson was not scared of Plaintiff because Plaintiff only had one leg and he had seen Plaintiff fight before, so he was confident Mr. Johnson could beat him up. (*Id.*; *see also* Doc. 1 at p. 66). Plaintiff claims Defendant Reid denied Mr. Johnson's request and encouraged Mr. Johnson to fight Plaintiff in retaliation for Plaintiff filing grievances (Doc. 12 at pp. 2-3; Doc. 1 at p. 66).

On September 4, 2019, Plaintiff observed Defendant Fiero open and read his legal mail before bringing it to Plaintiff's cell (Doc. 1 at p. 67; Doc. 67-1 at pp. 53-54). According

to Plaintiff, Defendant Fiero did not realize Plaintiff was observing him read Plaintiff's mail, which contained the grievance Plaintiff had wrote about him (Doc. 1 at pp. 67-68; Doc. 67-1 at pp. 56-57). When Plaintiff asked him why he was reading his mail, Defendant Fiero said he "wanted to see what your snitch ass wrote about me and just to let you know if you wasn't such a dick, I wouldn't have broken your leg that day." (Doc. 1 at p. 68). Plaintiff decided to avoid further escalating the situation at that time and instead filed a grievance against Defendant Fiero for opening and reading his mail outside of his presence, as well as potentially removing pages from his mail (Doc. 67-5 at pp. 12-13).

Following a threshold review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on four claims:

**Count 1**:    Eighth Amendment claim against C/O Fiero and Sgt. Reid for the use of excessive force on Plaintiff on May 23, 2019.

**Count 2**:    Eighth Amendment claim against C/O Fiero, Sgt. Reid, C/O Clary, Nurse [Kermicle], and Wexford Health Sources, Inc. for deliberate indifference to Plaintiff's serious medical needs related to his injured leg/ankle on May 23, 2019.

**Count 3**:    First Amendment claim against Lt. Eckelberry and Sgt. Reid for encouraging Plaintiff's cellmate to attack him and placing him at risk of injury in retaliation for Plaintiff filing grievances.

**Count 7**:    First Amendment claim against C/O Fiero for opening Plaintiff's grievances and legal mail in retaliation for Plaintiff filing grievances.

(Doc. 12 at pp. 3-7).

After this matter moved beyond the exhaustion of administrative remedies stage (*see* Doc. 46), Plaintiff filed a motion to appoint counsel (Doc. 52). That motion was granted on May 4, 2023, and Plaintiff's appointed counsel entered his appearance two

weeks later (Doc. 55). Thereafter, Defendants Eckelberry, Fiero, and Reid filed their Partial Motion for Summary Judgment on July 22, 2024 (Doc. 67). Defendant Kermicle also filed her Motion for Summary Judgment and supporting memorandum on that date (Docs. 68, 69). Plaintiff, through counsel, filed responses in opposition to Defendants' motions on August 21, 2024 (Docs. 70, 71). Defendant Kermicle filed a reply in support of her motion on September 4, 2024 (Doc. 72). Around that same time, Plaintiff's appointed counsel moved to withdraw as Plaintiff's attorney (Doc. 73) and was permitted to do so for good cause (Doc. 74).[1]

## DISCUSSION

### I.     Summary Judgment Standard

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.'" *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (quoting FED. R. CIV. P. 56(c)). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Substantive law determines which facts are considered material. *See Jaranowski v. Indiana Harbor Belt*

---

[1] Per the Court's Order granting counsel's motion to withdraw, new counsel was not appointed to represent Plaintiff at that time because Plaintiff's former, court-appointed counsel had already done all that was necessary to respond to Defendants' motions for summary judgment (Doc. 74). Given that several of Plaintiff's claims will now be moving beyond the summary judgment stage, Plaintiff may file a new motion to recruit counsel if he desires. However, the Court believes it would be prudent to first discuss the utility of a settlement conference or mediation before ultimately deciding whether to recruit another attorney to represent Plaintiff at trial.

*R.R. Co.*, 72 F.4th 744, 749 (7th Cir. 2023). Moreover, although a non-movant receives the benefit of conflicting evidence and reasonable inferences, he or she is still required to produce evidence sufficient to establish the essential elements of his or her claims. *Jackson v. Sheriff of Winnebago County, Illinois*, 74 F.4th 496, 500 (7th Cir. 2023).

II.    <u>Defendants Eckelberry, Fiero, & Reid's Partial Motion for Summary Judgment</u>

Defendants Eckelberry, Fiero, and Reid argue they are entitled to summary judgment on Plaintiff's First Amendment retaliation claims (i.e., Counts 3 and 7) because Plaintiff cannot demonstrate that they retaliated against him (Doc. 67 at pp. 8-13). In response, Plaintiff contends he has demonstrated sufficient evidence to establish each element of his retaliation claims against Defendants Eckelberry, Fiero, and Reid (Doc. 71 at pp. 9-13). Furthermore, Plaintiff argues that Defendants' motion either improperly discredits or altogether ignores evidence that is favorable to him (*Id.*).

"To prevail on a First Amendment retaliation claim, a plaintiff must establish three elements. First, he must show he engaged in protected First Amendment activity. Second, he must show an adverse action was taken against him. Third, he must show his protected conduct was at least a motivating factor of the adverse action." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020). *See also Thomas v. Anderson*, 912 F.3d 971, 976 (7th Cir. 2018) ("But a retaliation claim only requires evidence that the plaintiff's protected activity was 'at least *a* motivating factor' for the retaliatory action."). The filing of a grievance undoubtedly constitutes a protected First Amendment activity. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir.

2010) ("A prisoner has a First Amendment right to make grievances about conditions of confinement[.]"); *Hasan v. U.S. Dept. of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005).

As to the second element, courts apply an objective standard to determine whether an action is sufficiently adverse to constitute retaliation – looking at whether the action is "likely [to] deter a person of ordinary firmness from continuing to engage in protected activity." *Holleman*, 951 F.3d at 880 (7th Cir. 2020) (internal quotation marks and citation omitted). However, "the harsh realities of a prison environment affect our consideration of what actions are sufficiently adverse," meaning prisoners may be required to tolerate more than others before an action taken against them is considered adverse. *Id.* at 880-81. And regarding the third, causation-based element, a motivating factor "is a factor that weighs in the defendant's decision to take the action complained of—in other words, it is a consideration present to his mind that favors, that pushes him toward, the action." *Hasan*, 400 F.3d at 1006. *See also Greene v. Doruff*, 660 F.3d 975, 978 (7th Cir. 2011) (A motivating factor "is a sufficient condition, but never a necessary one[.]"). Moreover, when determining whether the plaintiff has demonstrated a motivating factor, "neither speculation nor suspicious timing—without more—is enough to survive summary judgment." *Streckenbach v. Meisner*, 768 Fed. Appx. 565, 570 (7th Cir. 2019).

Therefore, to prevail on each of his First Amendment retaliation claims against Defendants Eckelberry, Reid, and Fiero, the question is whether Plaintiff provided sufficient evidence to establish that those Defendants took adverse action against him, and that Plaintiff's grievances served as a motivating factor in their decisions to do so.

a.  <u>*Count 3 – First Amendment Retaliation Claim Against Defendant Eckelberry*</u>

Defendant Eckelberry argues Plaintiff has not identified any adverse action he made against Plaintiff (Doc. 67 at pp. 9-10). Additionally, Defendant Eckelberry contends he was unaware of the grievances Plaintiff filed and therefore, those grievances could not have been a motivating factor for any allegedly adverse action he took against Plaintiff (*Id.*). In response, Plaintiff avers that: (1) Defendant Eckelberry took an adverse action against him by encouraging his cellmate to attack him; and (2) he has pointed to sufficient evidence to demonstrate a factual dispute as to whether Defendant Eckelberry was aware of Plaintiff's grievances (Doc. 71 at pp. 10-12). Because Defendant Eckelberry's argument related to his knowledge of Plaintiff's grievances is dispositive, the Court focuses its analysis on that point.

Specifically, Plaintiff's claim against Defendant Eckelberry fails because Plaintiff has not produced any evidence demonstrating that Defendant Eckelberry knew of Plaintiff's protected activity (the filing of grievances) at the time he allegedly took an adverse action against Plaintiff on August 25, 2019. Put simply, Defendant Eckelberry could not have retaliated against Plaintiff for something he did not even know about at the time of his alleged retaliation. *See, e.g.*, *West v. Kingsland*, 679 Fed. Appx. 482, 486 (7th Cir. 2017) (In order for a jury to find that the grievances could have been a motivating factor in the alleged retaliatory conduct, "West would have to show, first, that Kingsland knew about those grievances."); *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 313 (7th Cir. 2017) ("To show that his firing was motivated by his protected speech, McGreal must first demonstrate that the defendants knew of the protected speech."); *Stagman v. Ryan*, 176

F.3d 986, 999-1000 (7th Cir. 1999) ("Allegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech."); *Streckenbach v. Meisner*, 768 Fed. Appx. 565, 569–70 (7th Cir. 2019) ("Streckenbach cannot point to any evidence suggesting that Podoski was even aware of the 2015 lawsuit at the time of any of this conduct, let alone that he was motivated by it."). And here, Plaintiff has not pointed to any evidence demonstrating or leading to the reasonable inference that Defendant Eckelberry knew of Plaintiff's grievances prior to his allegedly retaliatory conduct.

Plaintiff attempts to overcome this hurdle by arguing that Defendant Eckelberry was a supervisor at Lawrence and "did admit that he was aware of the grievances filed against his coworkers, although he could not recall when it was that he first became aware of that." (Doc. 71 at p. 11). The flaw in Plaintiff's argument, however, is that while Defendant Eckelberry admitted to eventually becoming aware of Plaintiff's grievances, he was unequivocal in his testimony that he did not learn of those grievances until after his allegedly retaliatory conduct had already occurred on August 25, 2019 (*see* Doc. 67-3 at pp. 8-9, 102, 105).[2]

---

[2] For instance, the following exchange occurred during Defendant Eckelberry's deposition:

> *Counsel*: Is it your testimony that before a grievance was filed against you by Mr. Irons, you had no knowledge as to Mr. Irons filing grievances against Mr. Fiero, Mr. Reid or Mr. Clary. Is that what you're stating?
> *Defendant Eckelberry*: Yes.

(Doc. 67-3 at p. 9). Furthermore, Plaintiff did not file a grievance against Defendant Eckelberry until *after* the interaction between him, Defendant Eckelberry, and Mr. Johnson on August 25, 2019 (*see* Doc. 1 at pp. 17-19). For this reason, while the Court analyzes the temporal proximity of Plaintiff's grievances to the alleged retaliatory conduct of Defendant Reid, such an analysis is not applicable or helpful to Plaintiff's claim against Defendant Eckelberry.

The only other evidence Plaintiff points with respect to Defendant Eckelberry's knowledge of Plaintiff's protected activities prior to August 25, 2019, is that Defendant Eckelberry and Defendant Reid both apparently told Plaintiff's cellmate, Mr. Johnson, that he could beat up Plaintiff because Plaintiff was in a boot (*see* Doc. 71 at p. 12; Doc. 67-1 at pp. 48-49). Even assuming, as the Court must at this stage given Plaintiff's testimony, that both Defendants Eckelberry and Reid made similar statements, Plaintiff has still failed to explain how Defendant Eckelberry's statement regarding something he could physically observe also demonstrates that he knew of Plaintiff's grievances before August 25, 2019. Without such a demonstration, Plaintiff has failed to establish that his grievances were a motivating factor for Defendant Eckelberry's actions.

For this reason, Defendant Eckelberry's Motion for Summary Judgment on Plaintiff's retaliation claim raised against him in Count 3 is GRANTED (Doc. 67). Furthermore, because Defendant Eckelberry is granted summary judgment on the only claim remaining against him, he is hereby **DISMISSED with prejudice** and judgment will be entered in his favor at the conclusion of this case.

b. *Count 3 – First Amendment Retaliation Claim Against Defendant Reid*

Defendant Reid similarly argues that he is entitled to summary judgment in Count 3 because Plaintiff can neither demonstrate that he took an adverse action against him, nor that Plaintiff's protected activities were a motivating factor for his actions (Doc. 67 at pp. 10-11). Plaintiff counters that he has established that Defendant Reid's actions were sufficiently adverse and were made in retaliation for his filing of grievances (Doc. 71 at

pp. 10-12). In this instance, the Court again focuses on the question of causation because it is dispositive to Plaintiff's claim against Defendant Reid.

Defendant Reid knew of Plaintiff's protected activity (i.e., the grievance Plaintiff filed against him) prior to his alleged retaliatory act, as evinced by Defendant Reid's admission that he replied to Plaintiff's grievance on June 18, 2019 (Doc. 67-2 at p. 86). However, chronology of events alone is typically insufficient to demonstrate a material issue of fact for trial. *See Streckenbach*, 768 Fed. Appx. at 570; *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) ("At the outset, we note that suspicious timing will rarely be sufficient in and of itself to create a triable issue.") (internal quotation marks and citations omitted). And here, Plaintiff's grievance was filed more than three months before Defendant Reid's allegedly retaliatory conduct, undercutting any inference of causation based on the sequence of events. *Kidwell*, 679 F.3d at 966 ("For an inference of causation to be drawn solely on the basis of a suspicious—timing argument, we typically allow no more than a few days to elapse between the protected activity and the adverse action.").

Plaintiff argues, however, that his grievances were not fully exhausted until months later, thereby demonstrating a much closer temporal proximity that supports an inference of a retaliatory motive (*see* Doc. 71 at p. 12). The Court is not persuaded. For one, Plaintiff has not cited to any caselaw to support his argument that the Court should look to the date the administrative review of Plaintiff's grievances was fully completed, and the Court has independently found some related caselaw to the contrary (*Id.*). *See Sweet v. Town of Bargersville*, 18 F.4th 273, 279-80 (7th Cir. 2021) ("First, even if November rather than January is the relevant point in time, we're left with a three-month gap—still

too long to support an inference of retaliatory motive. Second, to assess whether the employer's timing is suspicious enough to be probative of retaliation, we look to the duration of time between the protected speech and the adverse employment action itself, not the steps in the decision process that preceded it."). Moreover, even if Plaintiff had provided support for this contention, the Court does not understand why it would be permissible to analyze the timing of events based upon the date Plaintiff's grievance became fully exhausted without any evidence that Defendant Reid was at least aware of when the administrative review process was completed. Additionally, even if the Court assumes that Defendant Reid first learned of Plaintiff's grievance in mid-June 2019 (at the time he responded to that grievance), Defendant Reid's alleged retaliation still did not occur until more than two months later. Seventh Circuit precedent makes clear that a gap of two months is not "very close" or made "on the heels" of Plaintiff's protected activity, and therefore, "these extended time gaps alone militate against allowing an inference of causation based on suspicious timing." *Kidwell v. Eisenhauer*, 679 F.3d 957, 967 (7th Cir. 2012) (first allegedly retaliatory acts occurred more than two months after the plaintiff's protected activity).

Plaintiff contends that additional evidence demonstrates that his grievances were a motivating factor for Defendant Reid's allegedly retaliatory conduct. Specifically, Plaintiff avers that Defendant Reid's alleged comment to Mr. Johnson that Plaintiff has only one leg and he has seen him fight demonstrates that his actions were retaliatory (Doc. 71 at p. 12; *see also* Doc. 67-1 at pp. 51-52). Operating under the assumption that Defendant Reid directly mentioned Plaintiff's leg injury and having seen him fight, the

question is whether that statement indicates an intent to retaliate against Plaintiff based upon Plaintiff's filing of a grievance, as opposed to being based upon Plaintiff's involvement in the fight itself.

Here, the Court holds that Plaintiff has failed to provide sufficient evidence to create a triable issue as to causation. In *Bradley v. Weber*, the plaintiff was previously involved in an altercation with guards, which led to criminal charges being brought against her, which she then successfully defended against in court. 20-CV-48-JDP, 2020 WL 4047974, at *2 (W.D. Wis. July 20, 2020). When a guard later made a comment that "staff don't like inmates who assault staff and that CCI staff spray the property of fighting inmates," the plaintiff sought to bring a retaliation claim against the guard. *Id.* at * 5. However, the court rejected the plaintiff's proposed claim, explaining that her "allegations do not satisfy the third element because nothing suggests that [the guard's] statements were motivated by [the plaintiff's] exercise of her speech rights by defending herself in court. Nothing in [the plaintiff's] complaint suggests that [the guard's] first statement referred to [the plaintiff] defending herself against criminal charges instead of to the alleged staff assaults themselves." *Id.*

Similarly, the only evidence that Plaintiff has cited to here, other than the weak evidence of timing discussed above, is that Defendant Reid made comments alluding to the underlying fight that occurred on May 23, 2019. Those comments, however, were about Plaintiff's injury and the fight itself; they make no mention of Plaintiff's protected activity of filing grievances. Even giving Plaintiff the benefit of the doubt, the only retaliatory motive that can be supported by Defendant Reid's alleged statements is a

retaliatory motive based upon Plaintiff's involvement in the fight, which was not a protected activity. In other words, Defendant Reid's comments could potentially support an inference that he was retaliating against Plaintiff for his conduct on May 23, 2019, but they do not likewise support an inference that Defendant Reid was retaliating against Plaintiff for the grievance he filed thereafter. Lastly, while Plaintiff claims that Defendant Reid made his comment and forced Plaintiff's cellmate to return to their cell due to Plaintiff's grievances, Plaintiff also admits that Defendant Reid never mentioned his grievances and that Plaintiff is operating on his own personal belief that the two are connected (Doc. 67-1 at p. 52). As such, this statement is mere speculation on the part of Plaintiff and does not create a genuine issue of fact. *See Circle City Broad. I, LLC v. AT&T Services, Inc.*, 99 F.4th 378, 384 (7th Cir. 2024) ("Speculation does not suffice to create a genuine issue of fact that defeats summary judgment.").

For this reason, Defendant Reid's Motion for Summary Judgment is GRANTED as to Plaintiff's retaliation claim raised against him in Count 3 (Doc. 67).

c. <u>*Count 7– First Amendment Retaliation Claim Against Defendant Fiero*</u>

Defendant Fiero argues that he is entitled to summary judgment on Plaintiff's First Amendment retaliation claim raised against him in Count 7 because Plaintiff's grievances were not a motivating factor for any allegedly adverse action taken against Plaintiff (Doc. 67 at pp. 12-13). Furthermore, Defendant Fiero contends that Plaintiff did not suffer an adverse action (*Id.*). In response, Plaintiff avers that Defendant Fiero ignores the evidence favorable to him and misconstrues what is required to establish an adverse action (Doc. 71 at pp. 12-13).

The Court is not persuaded by Defendant Fiero's argument that he was merely performing his job duties and did not take a sufficiently adverse action (Doc. 67 at p. 13). Pertinently, Plaintiff testified that Defendant Fiero improperly opened and read his legal mail outside of his presence because he wanted to see what Plaintiff's "snitch ass wrote about him." (Doc. 67-1 at p. 54). While Defendant Fiero has offered contradicting testimony as to whether that actually occurred, Defendant Fiero did admit that he was only supposed to open legal mail in front of the recipient (Doc. 67-4 at p. 82). In light of this factual dispute, and at this stage of the case, the Court assumes that Defendant Fiero impermissibly opened and read Plaintiff's legal mail outside of his presence in violation of job requirements. Additionally, Plaintiff specifically testified that Defendant Fiero was reading legal mail that contained his May 28, 2019, grievance that complained of Defendant Fiero's actions (Doc. 67-1 at p. 57).

In this specific situation, the Court finds that having the guard who an inmate wrote a grievance about open and read legal mail containing the grievance against him, while outside the presence of that individual, would deter a person of ordinary firmness from continuing to engaged in protected activity. *See Vasquez v. Raemisch*, 480 F. Supp. 2d 1120, 1140 (W.D. Wis. 2007) (quoting *Wolfish v. Levi*, 573 F.2d 118, 130 (2d Cir. 1978)) ("As noted by one court: 'It takes little more than common sense to realize that a tender note, so important to the morale of the incarcerated individual, might never be penned if the writer knew that it would first be scrutinized by a guard.'"); *Shatner v. Page*, 00-0251-DRH, 2009 WL 260788, at *20 (S.D. Ill. Feb. 4, 2009) ("A person of ordinary firmness would be deterred from writing privileged communications to his attorney if he believed his

communications would be read by prison officials and he would be subject to disciplinary action based on those communications.").[3] Again, the Court emphasizes that Defendant Fiero did not simply open Plaintiff's mail outside his presence by mistake or in conformity with his job duties. Rather, Plaintiff has presented evidence that Defendant Fiero: (1) hid his action of opening Plaintiff's mail from Plaintiff's view; (2) intentionally violated his job directives by doing so; (3) continued to read Plaintiff's mail even after observing that it was legal mail and did not contain contraband; (4) admitted to taking such an action specifically to learn what Plaintiff said about him; and (5) labeled Plaintiff as a snitch[4] (Doc. 67-1 at pp. 53-57). The Court believes this constitutes a sufficiently adverse action, and any further question as to whether this conduct may deter an ordinary person in the future is a question of fact that should be reserved for the trier of fact. *See Douglas v. Reeves*, 964 F.3d 643, 647 (7th Cir. 2020) ("Whether retaliatory conduct is sufficiently severe to deter is generally a question of fact[.]").

---

[3] Notably, most cases involving claims of opening a prisoner's mail involve standalone claims related to the act of opening an inmate's mail. In such situations, the court's analysis typically focuses on what right, if any, an inmate has to be present when his mail is opened or to open it in private. *See, e.g.*, *Guajardo-Palma v. Martinson*, 622 F.3d 801 (7th Cir. 2010). This case is distinguishable from those mail cases because here, the issue isn't whether Plaintiff had a right to be present when his mail was opened, but rather, whether Defendant Fiero's action of opening and reading Plaintiff's mail constitutes a sufficiently adverse action to support Plaintiff's claim that Defendant Fiero retaliated against him for filing a grievance. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) ("Even though some of these allegations would likely not be actionable in and of themselves, if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under § 1983.").

[4] While it is not entirely clear whether other inmates heard Defendant Fiero label Plaintiff as a snitch, the Court notes that "it is common knowledge that snitches face unique risks in prison." *Streckenbach v. Meisner*, 768 Fed. Appx. 565, 569 (7th Cir. 2019) (internal quotation marks and citations omitted). And given the risk created by Defendant Fiero's remark, "a reasonable juror could infer that being labeled a snitch would likely deter a person of 'ordinary firmness' from exercising his First Amendment rights." *Id.*

Furthermore, contrary to Defendant Fiero's assertions, it matters not that Plaintiff himself was not deterred and continued to utilize the grievance process.[5] *Id.* at 646 ("The standard is objective, so a specific plaintiff's persistence does not undermine his claim."); *Whalen v. MacKenzie*, 24-CV-342-JDP, 2024 WL 5165871, at *6 (W.D. Wis. Dec. 19, 2024) ("It is about the ordinary person in the plaintiff's circumstances, so the actual effect on the plaintiff is not dispositive."). What matters is whether an ordinary person would be deterred from continuing to use the grievance process when the individual guard whose actions he was grieving proceeded to open and read his legal mail outside his presence to learn more about the contents of that grievance, and then called him a snitch. And here, given the specific circumstances Plaintiff has testified to, the Court answers in the affirmative.

Finally, as to the third element, the Court concludes that Plaintiff has presented sufficient evidence from which the finder of fact could conclude that Plaintiff's grievances were a motivating factor for Defendant Fiero's allegedly adverse action. Pointedly, Plaintiff's testimony was that Defendant Fiero confessed as much and said he wanted to see what Plaintiff wrote about him (Doc. 67-1 at p. 54), thereby demonstrating that his actions were made because Plaintiff had filed a grievance against him. Furthermore, Defendant Fiero's actions of opening Plaintiff's mail in a hidden manner and then

---

[5] The Court recognizes that typically, singular instances of mail tampering are not enough to deter an ordinary prisoner from exercising his First Amendment rights. *See Shaw v. Litscher*, 715 Fed. Appx. 521, 524 (7th Cir. 2017). However, as explained above, Plaintiff has provided evidence of Defendant Fiero's allegedly improper motive and threatening conduct. Furthermore, the Court does not believe it would be appropriate to allow Defendant Fiero to avoid liability because Plaintiff's evidence only establishes one instance of him opening his mail, when that same evidence tends to suggest that Defendant Fiero specifically sought out that piece of mail so he could see what Plaintiff wrote about him.

continuing to read that mail provides additional evidence that Defendant Fiero's actions were done in retaliation for Plaintiff filing that specific grievance against him and not because they were part of his job duties.

For these reasons, the Court finds Plaintiff has presented sufficient evidence to establish the essential elements of his retaliation claim against Defendant Fiero. Accordingly, Defendant Fiero's Motion for Summary Judgment as to Count 7 is DENIED (Doc. 67).[6]

### III.    Defendant Kermicle's Motion for Summary Judgment

Defendant Kermicle separately moves for summary judgment on Plaintiff's deliberate indifference claim raised against her (Docs. 68, 69). Specifically, Defendant Kermicle argues that (1) she was not deliberately indifferent to Plaintiff's serious medical need, and (2) the twelve-hour delay in treatment did not exacerbate Plaintiff's injury or unnecessarily prolong his pain (Doc. 69 at pp. 8-10). Plaintiff counters that Defendant

---

[6] Defendant Fiero also argues that he is protected from liability by the doctrine of qualified immunity (Doc. 67 at pp. 13-14). Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This analysis is broken down into two steps: "First, a court must decide whether the facts that a plaintiff has alleged … make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted).

As discussed above, Plaintiff has presented sufficient evidence to establish each of the elements of his First Amendment retaliation claim against Defendant Fiero. Furthermore, even if opening Plaintiff's mail in such a way would not create a separate constitutional violation, the right to be free from retaliation was clearly established at the time of Defendant Fiero's alleged retaliation and that is the constitutional claim Plaintiff is proceeding upon. *See Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996) ("As discussed above, retaliation against constitutionally protected conduct is actionable regardless of whether the defendant's actions independently violate the constitution. A prison official in McDaniel's position therefore would have been on notice that any retaliation, whatever its shape, could give rise to liability."). For this reason, the Court DENIES Defendant Fiero's claim that he is entitled to summary judgment based upon the doctrine of qualified immunity.

Kermicle ignored evidence favorable to him and disregarded the suffering he experienced due to her failure to treat his ankle injury (Doc. 70 at pp. 10-14).

Pursuant to the Eighth Amendment, prison officials "must provide humane conditions of confinement" by, among other things, "ensur[ing] that inmates receive adequate food, clothing, shelter, and medical care[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "To determine if the Eighth Amendment has been violated in the prison medical context, we perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016); *see also King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (explaining that the first element is objective while the second element is subjective); *Brown v. Osmundson*, 38 F.4th 545, 550 (7th Cir. 2022) (same).

To satisfy the first, objective element, "[a] medical need is considered sufficiently serious if the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013) (quoting *Gomez v. Randle,* 680 F.3d 859, 865 (7th Cir. 2012)). Meanwhile, to satisfy the second, subjective element, a prison official acts with deliberate indifference only when he "actually [knows] of and disregard[s] a substantial risk of harm." *Brown*, 38 F.4th at 550 (internal quotation marks and citation omitted).

Defendant Kermicle concedes that Plaintiff's broken ankle constituted an objectively serious medical need (Doc. 69 at p. 8). *See, e.g., Baker v. Wexford Health Sources,*

*Inc.*, 118 F. Supp. 3d 985, 993 (N.D. Ill. 2015) (noting there was no dispute that a fractured arm constituted an objectively serious medical condition); *Ammons v. Lemke*, 426 F. Supp. 2d 866, 871 (W.D. Wis. 2006) (finding wrist facture constituted a serious medical condition); *Senisais v. Fitzgerald*, 940 F. Supp. 196, 199 (N.D. Ill. 1996) ("Senisais' broken hand undoubtedly constitutes a serious injury."). However, she argues there is no evidence to demonstrate that she observed that injury and was deliberately indifferent to it (Doc. 69 at pp. 8-10).

Undoubtedly, Defendant Kermicle has presented numerous pieces of evidence to support her contention that she did not observe, and thus was unaware, of Plaintiff's ankle injury (*see, e.g.*, Doc. 69-1 at p. 3 - the medical report from May 23, 2019; Doc. 69-2 at p. 24 - Defendant Kermicle's deposition testimony; Doc. 67-2 at p. 62 - Defendant Reid's deposition testimony; Doc. 67-3 at pp. 73-74 - Defendant Eckelberry's deposition testimony, Doc. 67-4 at p. 12 - Defendant Fiero's deposition testimony). However, contrary to Defendant Kermicle's assertions, Plaintiff has presented sufficient, contrary evidence to demonstrate her knowledge and subjective awareness of Plaintiff's ankle injury. Specifically, Plaintiff testified that he "had told Ms. Kermicle that my leg felt like a limp spaghetti noodle and that it was broke." (Doc. 67-1 at p. 82). Plaintiff further testified that Defendant Kermicle untied and removed his left boot, squeezed his ankle, and told him that it was just a little swollen, but he would be okay (*Id.* at p. 83). Plaintiff then protested Defendant Kermicle's lack of treatment, to which she allegedly responded, "[y]ou walked over here on it, so there can't be that much wrong with it." (*Id.*). Consequently, Plaintiff's testimony establishes a dispute of material fact as to Defendant

Kermicle's subjective awareness of his ankle injury that is best left for the jury to decide. *See Conley v. Birch*, 796 F.3d 742, 747 (7th Cir. 2015) ("[T]he record suggests that Potts communicated information sufficient to lead Dr. Birch to strongly suspect that Conley had suffered a fracture. Whether she in fact made that inference is a question for trial.").

Defendant Kermicle attempts to discredit Plaintiff's testimony as self-serving and contradicted by the verified medical evidence, "[b]ut none of [her] arguments undercuts the value of this testimony at summary judgment, where we resolve all disputed facts and make all reasonable inference in favor of the plaintiff and do not weigh the credibility of witnesses." *Ortiz v. City of Chicago*, 656 F.3d 523, 532 (7th Cir. 2011).[7] "[A] plaintiff's own prior affidavit or declaration is a valid evidentiary basis to deny summary judgment 'as long as it otherwise contains information that would be admissible if he were testifying directly,' and '[t]here is nothing suspect about the fact that such affidavits are normally self-serving.'" *Wilson v. Wexford Health Sources, Inc.*, 726 F. Supp. 3d 881, 900 (N.D. Ill. 2024) (quoting *Rooni v. Biser*, 742 F.3d 737, 740 (7th Cir. 2014)). Here, if Plaintiff's testimony is taken as true, this would provide sufficient evidence to demonstrate Defendant Kermicle's subjective awareness of Plaintiff's ankle injury.

Defendant Kermicle also raises the related argument that even if she was aware of Plaintiff's injury, her failure to properly diagnose that injury merely amounts to an inadvertent failure to provide medical care (Doc. 69 at p. 10). The Court is not persuaded.

---

[7] As the Seventh Circuit has explained, "Courts, including this one, occasionally have issued opinions asserting that self-serving affidavits and depositions may be discounted. Yet 'we long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is self-serving.'" *Smith v. Schaefer*, 525 Fed. Appx. 440, 441-42 (7th Cir. 2013).

Plaintiff testified that he directly told Defendant Kermicle of his ankle injury at least twice during his visit (Doc. 67-1 at pp. 82-83). Yet, even after allegedly observing that his ankle was swollen, Defendant Kermicle provided him with no treatment and did nothing more than tell him that he would be okay, and it can't be that injured since he walked on it (*Id.*). In other words, Plaintiff has provided evidence that even after learning of Plaintiff's ankle injury and the accompanying pain Plaintiff was experiencing, Defendant Kermicle altogether ignored that injury and provided Plaintiff with no treatment or medication. *See Conley v. Birch*, 796 F.3d 742, 747 (7th Cir. 2015) ("That said, Conley's fracture need not yet have been diagnosed as such to have demanded action on the part of Dr. Birch. An official may not escape liability by 'refus[ing] to verify underlying facts that [s]he strongly suspect[s] to be true.'"). In fact, while Defendant Kermicle denies having been aware of Plaintiff's ankle injury (a factual dispute which the Court must resolve in Plaintiff's favor at this stage in light of his testimony), it is undisputed that Defendant Kermicle did not provide any treatment for Plaintiff's ankle injury on May 23, 2019.[8] As the Seventh Circuit has stated, "our caselaw clearly establishes that regardless of the

---

[8] Admittedly, Defendant Kermicle did provide treatment for Plaintiff's pepper spray exposure on May 23, 2019. Accordingly, an argument could be made that it would be improper to refer to Defendant Kermicle's actions as providing no treatment to Plaintiff. However, because of the clear distinction between Plaintiff's ankle injury and pepper spray exposure, the Court finds it easier to simply characterize this as Defendant Kermicle providing no treatment to Plaintiff's ankle injury. Nevertheless, even if one were to look at Plaintiff's visit with Defendant Kermicle as a whole and determine that she did provide Plaintiff with some general treatment, the Court has no trouble concluding that washing Plaintiff's face for pepper spray and doing nothing to treat Plaintiff's ankle injury constituted an obvious departure from minimally competent medical judgment. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) ("Another situation that might establish a departure from minimally competent medical judgment is where a prison official persists in a course of treatment known to be ineffective. For example, if knowing a patient faces a serious risk of appendicitis, the prison official gives the patient an aspirin and sends him back to his cell, a jury could find deliberate indifference even though the prisoner received some treatment.").

disease or injury at issue, utterly failing to treat a serious medical condition constitutes deliberate indifference." *Campbell v. Kallas*, 936 F.3d 536, 549 (7th Cir. 2019). *See also Ortiz v. City of Chicago*, 656 F.3d 523, 538-39 (7th Cir. 2011) ("Yet it is well settled that providing no medical care in the face of a serious health risk constitutes deliberate indifference."); *Perez v. Fenoglio*, 792 F.3d 768, 779 (7th Cir. 2015) ("Nurses, like physicians, may thus be held liable for deliberate indifference where they knowingly disregard a risk to an inmate's health."); *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 661 (7th Cir. 2021) ("Not treating pain *can* be an Eighth Amendment violation, of course, even if it is a matter of only minutes or hours."). Viewing the facts in a light most favorable to Plaintiff, here there can be no claim that Defendant Kermicle was merely negligent by providing no treatment for Plaintiff's ankle injury in light of her subjective awareness of that injury and the pain it was causing Plaintiff.

Finally, Defendant Kermicle argues that she is entitled to summary judgment because, at most, Plaintiff only experienced a twelve-hour delay in receiving treatment and no medical evidence demonstrates that this delay exacerbated his injury (Doc. 69 at pp. 9-10). In support, Defendant Kermicle cites to the case of *Colin v. Gerst* to argue that Plaintiff needed to point to verifying medical evidence that the delay in treatment, rather than the underlying condition, caused some degree of harm (Doc. 69 at p. 9). *See* 19-CV-494-DWD, 2022 WL 3924792, at *5 (S.D. Ill. Aug. 31, 2022). Crucially, however, *Colin* was "not a case where Plaintiff got no treatment," but instead was "a case where Plaintiff contends that the treatment he received was severely deficient." *Id.* at *6. Therefore, given the specific facts at issue in this case, the Court finds *Colin* to be inapplicable because here

Plaintiff did not receive any treatment for his objectively serious ankle injury. *See also Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007) ("In cases where prison officials **delayed rather than denied medical assistance** to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm.") (emphasis added). In addition, the evidence demonstrates that Plaintiff unnecessarily suffered severe pain following Defendant Kermicle's purported failure to provide any treatment for his ankle injury.[9] *See Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) ("A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury or unnecessarily prolonged his pain, and even brief, unexplained delays in treatment may constitute deliberate indifference.") (internal quotation marks and citations omitted).

For these reasons, the Court finds Plaintiff has presented sufficient evidence to establish the elements of his Eighth Amendment deliberate indifference claim against Defendant Kermicle. Therefore, Defendant Kermicle's Motion for Summary Judgment is DENIED (Doc. 68).

---

[9] In this regard, Defendant Kermicle has repeatedly emphasized that Plaintiff "reported minimal pain" of 2 out of 10 just two days after the incident to support her contention that she did not unnecessarily prolong Plaintiff's pain (Doc. 69 at p. 8; Doc. 72 at p. 11). Pertinently, Plaintiff was not prescribed pain medication or other assistive devices for the twelve hours following his visit with Defendant Kermicle, meaning he presumably would have been in greater pain before receiving such treatment. Meanwhile, two days later, medical records demonstrate Plaintiff had received x-rays, been instructed to ice, prescribed painkillers, and provided with a medical boot (Doc. 69-1 at pp. 4, 11-14 & 37-39). Thus, contrary to Defendant Kermicle's assertions, the fact that Plaintiff's pain substantially diminished after he received treatment for his ankle injury may actually provide evidence that he was unnecessarily subjected to severe pain for the twelve hours following his visit with Defendant Kermicle due to her failure to provide any treatment.

<u>CONCLUSION</u>

For the reasons outlined above, Defendant Eckelberry and Reid's Motion for Summary Judgment as to Count 3 is **GRANTED** (Doc. 67); Defendant Fiero's Motion for Summary Judgment as to Count 7 is **DENIED** (Doc. 67); and Defendant Kermicle's Motion for Summary Judgment as to Count 2 is **DENIED** (Doc. 68).

As this Order disposes of the only claim remaining against Defendant Eckelberry, Defendant Eckelberry is hereby **DISMISSED with prejudice** and judgment will be entered in his favor at the conclusion of this case.

This case will be set for a status conference by separate notice to discuss the utility of referring this case for a settlement conference or mediation.

**IT IS SO ORDERED.**

**DATED:  March 17, 2025**

**s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**
